UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
M.E.S., INC.,

                Plaintiff,

                - against -

RYAN ELECTRIC CO., INC. and JOSEPH RYAN,

                Defendants.
-----------------------------------------------------------------X

**MEMORANDUM OF DECISION**

1:02-CV-04105-ENV-VVP

**VITALIANO, D.J.**

This cause came on for trial before the Court sitting without a jury. A transcription of the record of the trial was not ordered. Having heard the testimony of the witnesses, reviewed the documentary exhibits received in evidence, and considered the arguments of counsel, this Memorandum of Decision, pursuant to Federal Rule of Civil Procedure 52, constitutes the Court's findings of fact and conclusions of law.

The Court has jurisdiction by way of diversity, 28 U.S.C. § 1332. Plaintiff M.E.S., Inc. ("MES") is a New York corporation with its principal place of business in New York. Defendant Ryan Electric Co., Inc. ("Ryan Electric") is a New Jersey corporation with its principal place of business in New Jersey. Defendant Joseph Ryan ("Mr. Ryan") is a citizen of New Jersey as well. The amount in controversy exceeds $75,000. Venue is properly laid in this Court under 28 U.S.C. § 1391 as MES's main office is in this judicial district. Both sides agree that the law of New York controls the decision.

The causes of action advanced at trial arise out of a contractual dispute. The operative facts are, in essential part, not contested. In the year 2000, MES was awarded a design and build contract relating to the construction of a weapons guidance center at the Picatinny Arsenal in

Dover, New Jersey. The contracting agency for the Government was the United States Army Corps of Engineers and the work to be performed was subject to the Miller Act, 40 U.S.C. §§ 3131-3134, including the required bonding of contractors to ensure performance and payment as set forth in § 3131. In or around April 2001, MES engaged Ryan Electric to perform electrical work on the Picatinny project pursuant to a subcontract agreement that was signed for Ryan Electric by Mr. Ryan as its president. Ryan Electric engaged other contractors and product vendors to facilitate its performance under the contract with MES. A little more than a year after MES and Ryan Electric had entered into their contractual arrangement and Ryan Electric had begun its performance, the bickering between the parties followed. On or about May 7, 2002, MES declared Ryan Electric in substantial breach and terminated the contract for cause. It is also undisputed that Ryan Electric failed to pay at least two of its subcontractors for work performed and billed by Ryan Electric to MES. One of those contractors, Lamp Post Electric, Inc. ("Lamp Post"), sued MES for payment pursuant to the Miller Act in an action filed in the United States District Court for the District of New Jersey. That claim was settled by MES. The settlement agreement required the payment of $33,000 by MES to Lamp Post and provided further for what is, in essence, a subrogation agreement authorizing MES to pursue the balance of Lamp Post's claim against Ryan Electric for $35,170.14 in this action.

The proof of breach by Ryan Electric is more than overwhelming; it is virtually uncontested. To cut to the quick, Ryan Electric failed to pay its own subcontractors in full as required by its written agreement with MES, the general contractor. Received in evidence at the trial was a series of sworn declarations subscribed to by Mr. Ryan which attested that Ryan Electric had paid the very subcontractors the uncontested proof established had not been paid. On the strength of this very significant and material default alone, MES was entitled to declare

breach of contract and to seek its provable damages. It is also entitled to, and is hereby awarded, the declaratory judgment it seeks to that effect.

This is not to say that the Court disbelieves Mr. Ryan's testimony that the sworn certifications of subcontractor payment he had provided MES was, to his own way of thinking, only certification that the money Ryan Electric had received from MES on the Picatinny Arsenal contract had been spent only on that very project. To the contrary, the Court finds very credible Mr. Ryan's practical description of a subcontractor's "borrow from Peter to pay Paul" approach. In the construction jobs Mr. Ryan had run, as he testified, it did not matter if monies requisitioned to pay Subcontractor #2 were actually used to pay Subcontractor #1 provided in the end that all the subcontractors were working the same job and that all were paid only for their work on that job. Of course, as both sides agree, that did not happen here. More importantly, Mr. Ryan's understanding to the contrary, the actual words of his certification have inescapable and fatal effect in this lawsuit. Mr. Ryan swore in those certifications that Ryan Electric paid subcontractors it had not paid, which was a material breach of Ryan Electric's contract with MES and exposed MES to significant actual and potential liability.

Furthermore, Mr. Ryan's contract juggling is in harmony with the testimony of George Makhoul, who managed the Picatinny Arsenal contract for MES. Mr. Makhoul confirmed Mr. Ryan's testimony that Ryan Electric complained that it wasn't receiving sufficient funds to meet the expenses it was incurring in performing this subcontract with MES. The bickering testified to both by Mr. Ryan and Mr. Makhoul provides the motive, this Court finds, for the diversion of contract payments by Ryan Electric for project purposes other than those set forth in the sworn certifications for the requisition of payment provided by Ryan Electric to MES. It also supports

the finding, which the Court makes, that Ryan Electric failed to provide sufficient manpower to perform its work on schedule as agreed to in its contract. This breach, too, is substantial and material and, therefore, further supports judgment for MES against Ryan Electric.

These last strokes of the brush also dispose of the two causes of action asserted by Ryan Electric in its counterclaims. Again, the Court finds credible Mr. Ryan's testimony that all the monies Ryan Electric received from MES were spent, one way or another, on the Picatinny Arsenal project. Following full discovery, MES does not offer by forensic accounting or otherwise any credible and persuasive proof that a penny of the payments made to Ryan Electric were diverted from the Picatinny Arsenal project. Indeed, the counterclaims assert that Ryan Electric was entitled to even more funds to meet its obligations on the Picatinny project. But that is where Ryan Electric's proof fails. At best, the proof suggests that Ryan Electric made an imprudent bid. Prior to the happening of its own contract defaults, Ryan Electric offers not a scintilla of evidence to establish any default on the part of MES. If Ryan Electric was entitled to more, it surely did not show at trial how. Accordingly, MES is also entitled to judgment dismissing the counterclaims.

The Court now turns to damages. Upon Ryan Electric's breach of its contract with MES, the agreement between the parties entitled MES to recover from Ryan Electric all sums necessary to complete the work Ryan Electric was to perform under the subcontract as well as losses, damages and expenses, including legal fees and disbursements, suffered by MES as a result of the defaults. Presumably in recognition of the bankrupt and defunct status of Ryan Electric, MES indicated at trial that it did not intend to pursue each pocket of damage that aggressive prosecution of its claims would likely establish. For example, no proof of loss was offered

regarding any expenses MES might have incurred in securing other subcontractors to perform the electrical work which was subject to the agreement that Ryan Electric had abandoned following MES's declaration of breach. Specifically, the proof offered by MES related to two unpaid subcontractors of Ryan Electric – Lamp Post and Anixter, Inc. ("Anixter"). The failure of Ryan Electric to pay these two subcontractors their due, moreover, is unchallenged.

Both subcontractors submitted unpaid invoices to MES. The award of damages to satisfy one of the claims is easy but, as to the other, not so. Lamp Post had, as previously indicated, brought a Miller Act claim against both MES and Ryan. The contract between MES and Ryan Electric authorized MES to satisfy such unpaid claims and to charge back to Ryan Electric that portion of the amount for which Ryan Electric was responsible, i.e., the amount paid by MES to Ryan Electric on Ryan Electric's requisition for payment of its subcontractor, Lamp Post. The proof here is that, crediting Ryan Electric the 10% retainage not forwarded by MES to Ryan Electric, MES was obligated to Lamp Post on account of Ryan Electric's default in the amount of $61,353.14. This amount includes the $33,000 already paid by MES to Lamp Post and the $28,353.14 outstanding on the settlement agreement entered into by MES and Lamp Post in the District of New Jersey action. Accordingly, MES is entitled to an award of damages in this action as a result of Ryan Electric's default in paying Lamp Post in the amount of $61,353.14 with interest from the date Ryan Electric was declared in default by MES, which is May 9, 2002.

Anixter tells a different tale. There is proof that work was performed by Anixter. There is proof that Ryan Electric certified that it had paid Anixter for that work. There is also proof, which is unchallenged, that Anixter was owed $9,902 by Ryan Electric for work performed on the Picatinny Arsenal project. The proof, however, ends there. There is not even proof in the record that Anixter still exists. Unlike Lamp Post, to be sure, there is no proof of any agreement

5

between Anixter and MES of the kind that exists between MES and Lamp Post which would obligate MES to pay a penny to Anixter. Anixter filed no claim under the Miller Act and has not pursued any claim whatsoever against MES. Particularly in light of the more than four year interval between Ryan Electric's breach of its agreement with Anixter and the time of trial, it would be highly speculative to conclude that MES has any exposure at all to Anixter long after the project was completed and the Miller Act bonds dissolved. This is not to say that Anixter might not divine a way to make a timely claim against MES. It is only to say that MES's proof falls short of establishing any likelihood that MES is exposed to any liability as a result of Ryan Electric's failure to pay Anixter. Moreover, should conjecture pass over into reality and Anixter's grievance with Ryan Electric ripen into a claim against MES, it should be understood that nothing in this Memorandum of Decision and subsequent Judgment will in any way bar MES from seeking indemnification from Ryan Electric on the Anixter claim of the kind awarded on the Lamp Post claim. The Court, therefore, awards no damages at this time on account of Ryan Electric's failure to pay Anixter for the services it rendered at the Picatinny Arsenal. Leave is specifically granted, however, to reopen this action for further proceedings if such claim is made of MES by Anixter.

Lastly, with respect to Ryan Electric, the Court finds that MES has a clear right under the contract to recover reasonable attorney's fees in connection with Ryan Electric's defaults. It is beyond quarrel that MES incurred legal expenses as a result of Ryan Electric's breach first in defending the Miller Act action brought by Lamp Post and also subsequently in the prosecution of this direct action against Ryan Electric. The proof of those expenses and of their reasonableness offered by MES is credible and sufficient. The Court finds that MES incurred legal expenses in defending the Lamp Post action in the amount of $28,733.31 and that such fees

and expenses were reasonable and necessarily incurred solely as a result of Ryan Electric's breach of the contract. The Court further finds that the sum of $13,627.81 in legal fees and expenses sought by MES as a result of its prosecution of this action are reasonable and were necessitated by Ryan Electric's contractual breaches. Accordingly, the Court hereby awards MES legal fees and expenses in the amount of $42,361.12, together with the costs and disbursements in this action with interest to run on these elements from the date of the entry of judgment against Ryan Electric.

That brings us to plaintiff's third and final claim. Unlike the first two causes, the complaint's third cause of action asserts a claim against defendant Joseph Ryan personally. The first issue in order of inquiry is discerning a basis upon which Mr. Ryan might be personally liable for Ryan Electric's defaults under the contract with MES. There is certainly no basis in contract since Mr. Ryan was not a party to the agreement or is there any separate agreement, such as a personal guarantee, which would make Mr. Ryan responsible for Ryan Electric's liability. Further, plaintiff acknowledges that it asserts no claim against Mr. Ryan directly either under the Miller Act or any other federal law. If there is any basis for liability, it must be found in state law.

In point of fact, though, the third cause of action does not actually identify a specific legal basis for its demand for relief. The complaint simply recites Ryan Electric's failure to pay Lamp Post and Anixter, calls attention to Mr. Ryan's sworn declaration on the requisitions certified to MES that such payments had been made, alleges that Mr. Ryan diverted the monies to his personal use, makes a nebulous reference to liens, and seeks to recover the diverted funds from Mr. Ryan. There is, however, no credible proof that Mr. Ryan diverted a penny of the money received from MES to any personal use, that is, a use other than a corporate expense of Ryan

7

Electric.

Ultimately, MES seeks to rely on the fact of diversion by Mr. Ryan, rather than proof of where the funds were diverted. At the close of its case, MES moved pursuant to Federal Rule of Civil Procedure 15 to conform its pleadings to the proof. In its Proposed Findings of Fact and Conclusions of Law, MES seeks to fill in this interstice by advancing liability under the New York State Lien Law. N.Y. LIEN LAW §§ 70-79-a. Enacted in derogation of the common law, the Lien Law provides a statutory remedy to recover trust funds, that is, payments due subcontractors, materialmen and laborers under a construction contract, personally from anyone who had diverted such funds from its intended purpose. N.Y. LIEN LAW § 71.

New York law is crystal clear that where a statutory cause of action is created like the Lien Law, the statute must be strictly construed. *See, e.g.,* N.Y. STAT. LAW § 301(a) (McKinney 1971); *Matter of Bayswater Health Related Facility v. Karagheuzoff*, 37 N.Y.2d 408, 414 (N.Y. 1975). Such statutes must not be interpreted to create causes of action not intended by the Legislature. Critically here, a *sine qua non* under New York's Lien Law for declaring a trust out of monies owed on a construction project, with it attendant personal liability for the diversion of such funds, is that the real property hosting the construction project be situated in New York. Obviously, the Picatinny Arsenal is located in New Jersey and not in New York. Therefore, New York's Lien Law also affords no basis for the personal liability of Mr. Ryan to MES as a result of his diversion of payments owed to Lamp Post and Anixter to pay other corporate obligations of Ryan Electric.

Since MES neither advances nor offers credible proof of any other theory of personal liability recognized by state law and since there is no basis for such liability in contract or federal law, there is no basis upon which to establish Mr. Ryan's personal liability to MES. Accordingly,

MES fails in its third cause of action and that claim must be, and hereby is, dismissed in its entirety.

## CONCLUSION

In accord with the findings of fact and conclusions of law incorporated in the foregoing Memorandum of Decision, plaintiff M.E.S., Inc. is entitled to judgment on its first cause of action declaring that defendant Ryan Electric Co., Inc. is in material breach of the subcontract agreement entered into by the parties by which Ryan Electric was to perform electrical work pursuant to a design/build contract awarded to MES to construct a weapons guidance center at the Picatinny Arsenal. On the second cause of action, MES is entitled to judgment against Ryan Electric for damages in the amount of $61,353.14 with interest from May 9, 2002 and legal expenses in the amount of $42,361.12 along with the costs and disbursements of this action. As to the third cause of action, defendant Joseph Ryan is entitled to judgment dismissing the claim against him personally in its entirety. On the counterclaims, MES is entitled to a judgment of dismissal as to both of them.

Within 10 days of the filing of this Memorandum of Decision, plaintiff shall submit a Judgment in accordance with it. The Clerk is hereby directed to administratively close this case.

SO ORDERED.

DATED: Brooklyn, New York
September 6, 2006

s/ENV

ERIC N. VITALIANO
United States District Judge